BERRY v. AMERICAN RIO GRANDE LAND & IRRIGATION CO.   (No. 6639.)

(Court of Civil Appeals of Texas.  San Antonio.  Dec. 14, 1921.  Rehearing Denied Jan. 11, 1922.)

1. Pleading   ⟳34(4) — Construed against pleader.

The language of a pleading will be construed most strongly against the pleader.

2. Waters and water courses ⟳254—Allegation that promise to cease discrimination by irrigation company was consideration of contract for supply to plaintiff held not to state cause of action for money paid for water.

In an action against an irrigation company to recover money paid, and to cancel a contract that had been fully performed, allegation in the petition that plaintiff was induced to contract by defendant's promise to cease discriminating among its consumers, and that the consideration had failed because defendant for eight years had discriminated, but not alleging any discrimination against plaintiff, does not state a cause of action.

3. Contracts ⟳94(6)—To be actionable, promise to act in the future must be made with present fraudulent intention not to carry it out.

In order to constitute a cause of action to rescind a contract or recover damages, a promise to do or not to do a certain thing in the future must be falsely made with present fraudulent intention not to carry out the promise.

4. Contracts ⟳94(5)—False promise must mislead complaining party to his injury.

A false promise, or even a misrepresentation of existing facts, cannot serve to avoid a contract unless the promise or misrepresentation is shown to have misled complaining party to his injury.

5. Waters and water courses ⟳254—Payment under terms of contract held waiver of objections to contract.

In an action against an irrigation company to recover money paid for eight years' water

⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

rental, on the ground that the company discriminated in supplying water, when demand was made for the yearly payments under the contract, plaintiff was bound to confirm or repudiate, and her election to pay was confirmation.

6. **Waters and water courses ⊘254—Though riparian owner was entitled to water from which irrigation company draws supply, contract to pay for supply was not without consideration.**

Though plaintiff as a riparian owner was entitled to the free use of the water from which an irrigation company drew its supply, as such owner she was not entitled to the free use of the company's facilities for distributing it, and therefore a sale of water supplied by the company to plaintiff was not without consideration.

Appeal from District Court, Hidalgo County; Hood Boone, Judge.

Action by Epsie Berry against the American Rio Grande Land & Irrigation Company. Demurrer to petition sustained, and plaintiff appeals. Affirmed.

See, also, 233 S. W. 781.

Graham, Jones, Williams & Ransome, of Brownsville, for appellant.

John P. Gause, of Mercedes, for appellee.

SMITH, J. In 1909 appellant, as the owner of certain lands embraced within appellee's irrigation system in Hidalgo county, entered into a contract with appellee whereby the latter, in consideration of certain fixed charges to be paid to it annually, agreed to supply appellant's lands with water for irrigation purposes, together with the necessary facilities for distributing the water over the lands. Under the terms of the contract appellant paid these charges until in 1918, when she sold her land. In 1920 she sued the irrigation company, seeking to cancel the contract and recover of the company all the moneys she had paid under the contract. A general demurrer was sustained to plaintiff's petition, the plaintiff declined to amend, the suit was dismissed, and this appeal resulted. The only question in the case, then, is whether or not the petition stated any cause of action.

We are of the opinion that the general demurrer was properly sustained. The allegations throughout the petition are vague and general, so much so, in fact, that the meaning of many of them is left to conjecture, surmise, and inference. This is particularly true as to the conditions and stipulations in the contract, and the purposes and effect thereof, which are embraced in the most general conclusions of the pleader, rather than in specific facts. Nearly every allegation of material fact in the petition was subject to special exception because of these objections, and we are not at all clear that these objections alone do not render the petition bad as against a general demurrer.

[1, 2] With the aid of the rule, applicable here, that the language of a pleading will be construed most strongly against the pleader, it is made apparent from the petition that appellee was an irrigation company operating an irrigation system in the vicinity of appellant's land, and that the parties entered into a contract by the terms of which the company agreed to furnish water for the irrigation of the owner's land, and supply the facilities for the distribution of the water thereon, and that for this service the owner agreed to pay the company a stipulated amount per acre each year. The parties apparently entered into the contract voluntarily and in good faith for the purposes for which it was made. There is no contention that the contract did not express the real agreement, or that it was procured by fraud of any character, or that it was executed in its expressed form as a result of any accident, fraud, or mistake. There is no contention that the irrigation company has failed or refused to exactly and fully perform a single obligation or service imposed upon it in the contract, and, so far as the petition shows, the company has complied with each and every such obligation, and performed each and every such service. This being true, it was entitled[1] to the charges expressly stipulated in the contract, as a matter of course.

But appellant, after thus setting up the voluntary execution of the contract as written, based upon agreed and obviously valuable consideration, and complete performance thereof by both parties for a period of eight years, undertakes to cancel the contract and recover the consideration she had paid for the undisputed performance by appellee of the conditions imposed upon it in the contract, by asserting that the sole consideration inducing her to execute the instrument was a promise or guaranty by appellee that it would cease to discriminate among its water consumers, and that this consideration had failed because appellee had continued through all that period to discriminate among its patrons. There is no contention that appellee had promised not to discriminate against appellant, or that it had in fact done so at any time since the contract was executed, but the sole complaint seems to be that appellee had agreed to discontinue discrimination against its patrons generally, but had failed to do so. These allegations show no cause of action accruing to appellant. We take it that an irrigation company supplying water to the public is prohibited by law from discriminating against individual users of its water,

⊘For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and it must be presumed that such company will comply with that law. A mere promise to do a thing required by law could not, in our opinion, form a valuable consideration for a contract of this character, and if, as appellant now contends, this was the sole consideration for the execution of the contract in question, appellee itself could have avoided it by showing there was no consideration for its execution. Nor could appellant use the alleged promise, and the subsequent disregard thereof by appellee, as a means of defeating the contract or of recovering damages.

[3] In the first place, it is not contended that the promise was fraudulently made for the purpose of inducing appellant to enter into the contract, whereas, in order to constitute a cause of action to rescind a contract, or recover damages, a promise to do or not to do a certain thing in the future must be falsely made with a present fraudulent intention not to carry out the promise. None of these elements are alleged to have existed in this case. Again, the promise must be of such nature as is reasonably calculated to induce, and must in fact induce, the complaining party to execute the contract. Here the promise, when analyzed, was simply an oral agreement by appellee to comply with the law and refrain from discriminating against its patrons. The law writes that agreement into every such contract, and puts that obligation upon every party thereto, and the agreement added nothing to appellee's duty and obligation, either to the public or to appellant. Certainly, then, the oral promise of appellee to do what was required of it by law could not have influenced appellant to make this contract, and could form no part of the consideration therefor.

[4] Again, the false promise, or even a misrepresentation of existing facts, cannot serve to avoid a contract unless the promise or misrepresentation is shown to have misled the complaining party to his injury. Here, even if all the other essential elements of fraudulent promise had been shown, no injury has been alleged to have occurred to appellant by the failure of the promise. So far as the petition shows to the contrary, appellee has all the time been ready, able, and willing to furnish all the facilities and supply all the water appellant has needed, and that was all the contract required of it in order to earn the charges appellant agreed to and did pay it; nor has appellee, so far as the petition shows, discriminated against appellant any way, thereby complying with the provision interpolated by law into the contract. So no injury has been done appellant by reason of the alleged broken promise, and she cannot complain. Bremond v. McLean, 45 Tex. 10;

Moore v. Cross, 87 Tex. 561, 29 S. W. 1051; Blythe v. Speake, 23 Tex. 436.

[5] There is another reason why appellant is precluded by her own allegations, and that is that she has affirmed the contract by making all the payments required of her thereunder for a period of eight years, and up to the time she sold the land involved therein. It is true she endeavors to escape the effect of these acts of affirmance by alleging that the payment in each of the first four years was made to avoid suit for the charges thus accruing and a foreclosure of the lien reserved against the land to secure the payments, and that the payment covering the last five years was made in order to clear the land of this lien, and thus enable her to give good title to the purchaser of her land in accordance with her contract with the purchaser. We think these allegations rather emphasize, than weaken, the effect of her course as a waiver. When demand was made upon her for the first payment under the terms of the contract, she was confronted with the necessity of confirming the contract by making the payment, or repudiating the contract by refusing payment. She elected to confirm when she made the payment, and thereby waived her objections to the contract. Each subsequent payment served to emphasize that confirmation and waiver.

But appellant alleges that she did not know of the "truth or falsity" of the promise of appellee not to discriminate, and could not have discovered the same by the use of diligence "until subsequent to two years prior to the filing of this suit"; the obvious purpose of the allegation being to avoid the limitation applicable to actions based on fraudulent representations. Aside from the fact that appellant did not allege such representations to be fraudulent, and that such a general allegation as to diligence in discovering the fraud is insufficient (Bremond v. McLean, 45 Tex. 10), these allegations are so inconsistent with other and more explicit allegations in the petition that they must be disregarded here. For, while appellant sets up only one objection to the validity of the contract, thereby affirming its validity in all other respects, she alleges that she made each and every payment under protest, at the time denying any liability under the contract, and it must be assumed that the protest and denial of liability were based upon her present contention of the vice in the contract. This protest and denial of liability were just as available then as they could be now. If she was not liable, she had an immediate remedy through the courts, and could then have accomplished what she now seeks to accomplish.

[6] The contention of appellant that because, as a riparian owner, appellee was

entitled to the free use of the waters of the source from which it drew its supply, the latter could not lawfully charge her for water so obtained, and that the obligation imposed upon her in the contract to pay for such water was therefore without consideration, is untenable. While it may be true that appellee was entitled to the free use of the water, appellant was not entitled to the free use of appellee's facilities for distributing the water upon her land, and we are led to understand from the petition that it was the use of these facilities that appellant agreed to pay for.

All assignments are overruled, and the judgment is affirmed.