**William F. HAMILTON, Appellant,**

v.

**MOTOR COACH INDUSTRIES, INC., Appellee.**

**No. 8551.**

Court of Civil Appeals of Texas, Texarkana.

July 5, 1978.

Rehearing Denied Aug. 1, 1978.

Henry Stollenwerck, Dallas, for appellant.

John L. Lancaster, III, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellee.

RAY, Justice.

This is a products liability case. Appellant (plaintiff), William F. Hamilton, brought suit against appellee (defendant), Motor Coach Industries, Inc. (MCI), seeking damages for an injury which blinded him in one eye. The case was tried before a jury, but after Appellant Hamilton had rested, the district court instructed a verdict and rendered judgment that Hamilton take nothing. Appellant has perfected his appeal and submits one point of error for our consideration. The point of error is as follows:

"The Honorable District Court erred in holding that Hamilton had failed to produce evidence of a complete cause of action based upon the tort of having placed an unreasonably dangerous product into the channels of commerce."

We agree that the trial court erred and its judgment will be reversed and the cause remanded for further proceedings.

## REVIEW OF AN INSTRUCTED VERDICT

In reviewing the judgment of the trial court following the granting of an instructed verdict, we must review the evidence in the light most favorable to the appellant. 3 McDonald's, Texas Civil Practice, Sec. 11.28.1 and Sec. 11.28.2. An instructed verdict is proper only where there is no evidence, or where the evidence is of such a character as to be of no probative force or value. *Mundy v. Stiles*, 257 S.W.2d 750, 752 (Tex.Civ.App.Waco 1953, writ ref'd n. r. e.).

## THE FAVORABLE FACTS

Appellant Hamilton sought damages for injuries he received in 1975 when he was undertaking to repair or rebuild a spring loaded air cylinder which was either manufactured by the appellee, MCI, or built to its specifications. Appellee contended that Hamilton was not a "user" or "consumer" within the meaning of Restatement (Second) of Torts, Sec. 402A (1965); that appellant failed to carry his burden of showing that the air cylinder reached him without substantial change from the condition in which it left appellee MCI; and, that because Hamilton was a mechanic experienced in the repair and handling of air cylinders, there was no duty to warn him of a danger of which he should have been aware by virtue of his experience and training.

Appellant Hamilton only sought damages for his injuries under the strict liability tort action covered by Restatement (Second) of Torts, Sec. 402A (1965). Sec. 402A states the following:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The evidence establishes that the air cylinder which injured appellant was either placed in a bus manufactured by MCI or as a part thereof or was sold directly as a replacement part.

The air cylinder was purchased by Texas, New Mexico, and Oklahoma coaches (TNMO) from MCI either as original equipment on a bus or as an original replacement, and, without any alteration in it, other than use, the cylinder was sent by TNMO to West Tex Industries (West Tex) for reconditioning.

When the cylinder was placed into the channels of commerce, MCI anticipated that

it would be subject to the action of corrosion and would need to be serviced and repaired· by a workman on separate occasions. MCI was also aware that mechanics without formal training might work on the air cylinder.

No restrictions were placed on the product in the sale which MCI made relative to those who could perform repair work on the cylinder. MCI knew that the presence of the spring in the cylinder presented a potential danger to anyone who might be required to work on the air cylinder and such fact was known to MCI when the cylinder was placed into the channels of commerce. The cylinder had no warning on it concerning the potential dangers of or the presence of the spring. MCI recognized that the potential danger existed and that a warning was needed and provided a warning in its parts manuals which were made available to those persons who purchased a bus.

When MCI placed the cylinder into the channels of commerce, it knew that under certain conditions the piston in the cylinder might stick in a position so that the spring was depressed. The evidence established that when the spring was depressed, it could achieve two hundred fifty pounds of force and eleven hundred pounds per square inch of pressure. The two hundred fifty pounds of spring force was expected by MCI.

Appellant Hamilton picked up the package containing the cylinder dispatched from TNMO to West Tex. Appellant did not know that the cylinder was spring loaded nor did it occur to him that it was. Hamilton undertook to repair the cylinder and while doing so the spring loaded piston and shaft inexplicably released and were propelled into his right eye, blinding him in that eye.

## THE CAUSAL CONNECTION ISSUE

■ The evidence in this case establishes a fact issue relative to causal connection between the seller's placing its product into the stream of trade and whether such contributed to the user's injury. It is clear that MCI was engaged in the business of marketing air cylinders and that it placed this air cylinder into the stream of trade. The favorable evidence indicates that Hamilton was injured as a result of the air cylinder having been placed into the stream of trade. It is now settled law in Texas that a cause of action exists against a seller who may be a manufacturer of an unreasonably dangerous product when such dangerous condition contributes to the user's or consumer's injury. *Shamrock Fuel & Oil Sales Co. v. Tunks,* 416 S.W.2d 779 (Tex. 1967); *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967). See Green, *Strict Liability Under Sections 402A and 402B: A Decade Of Litigation,* 54 Texas L.Rev. 1185, 1197 (1976); Green & Smith, *Negligence Law, No Fault, and Jury Trial —III,* 51 Texas L.Rev. 207, 217–22 (1973).

## THE DUTY OF THE SELLER

■ ˙The duty of the seller under Sec. 402A is to refrain from placing a product into the stream of trade in an unreasonably dangerous, defective condition. Or put another way, the seller is under a duty not to market a product which subjects the consumer or user or someone in the vicinity of its use to an unreasonable risk of harm. Keeton, *Products Liability—Inadequacy of Information,* 48 Texas L.Rev. 398 (1970). Likewise, the courts have expanded Sec. 402A and the risks that fall within its scope, and subject a seller to liability if he introduces an unreasonably dangerous, though nondefective product into the stream of trade without adequate warning of its danger or without adequate directions for its use. Further, a seller is subjected to liability if he introduces into the channels of commerce a nondefective product that he can anticipate will undergo change and become unreasonably dangerous if the seller does not warn the consumer or user of such danger. *Sharp v. Chrysler Corporation,* 432 S.W.2d 131, 136 (Tex.Civ.App.Houston—14th Dist.1968, writ ref'd n. r. e.); *Darryl v. Ford Motor Company,* 440 S.W.2d 630 (Tex. 1969); *General Motors Corporation v. Hopkins,* 548 S.W.2d 344, 351 (Tex.1977). Com-

ment "1" of Section 402A of the Restatement recognizes that a "user" includes those who are utilizing the product for the purpose of doing work upon it for the ultimate buyer. Appellant Hamilton falls within the category of a user. See *Helicoid Gage Div. of American Chain & Cable Co. v. Howell*, 511 S.W.2d 573, 578 (Tex.Civ. App.Houston—14th Dist.1974, writ ref'd n. r. e.), and *Ethicon, Inc. v. Parten*, 520 S.W.2d 527, 533 (Tex.Civ.App.Houston— 14th Dist.1975, no writ); Sales & Perdue, *The Law Of Strict Tort Liability In Texas*, 14 Hous.L.Rev. 1, pp. 129–130 (1976–77). In the present case the favorable evidence shows that MCI expected the air cylinder to undergo change from its use; that the cylinder would need servicing; that the cylinder might become unreasonably dangerous; and that it could be expected that the cylinder might be serviced by untrained or uninformed workmen. It is our opinion that the seller, MCI, owed a duty to Hamilton, a user, to refrain from placing an unreasonably dangerous air cylinder into the stream of trade without an adequate warning of its dangers. Green, *Strict Liability Under Sections 402A and 402B: A Decade Of Litigation*, 54 Texas L.Rev. 1185, 1200 (1976). It is a fact issue as to whether the air cylinder was unreasonably dangerous as will be discussed next.

## THE VIOLATION OF DUTY ISSUE

■ A more perplexing issue raised by the evidence is whether MCI violated its duty to Hamilton by placing its air cylinder into the stream of trade. The language of Sec. 402A makes it clear that "One who sells any product in a defective condition unreasonably dangerous to the user . . ." violates the seller's duty. Likewise, one who sells a nondefective unreasonably dangerous product without adequate warning violates the seller's duty. The failure to warn is the wrongful conduct which violates the duty owed by the seller to the consumer or user that imposes liability for the injury done by the seller's marketing the product that injured the consumer. The evidence establishes a fact issue as to whether the warning contained in the parts

manual delivered to the purchaser of a bus is sufficient warning to Hamilton, a user, who was attempting to service or repair the air cylinder. The trier of fact must, of course, first determine whether the product was in an unreasonably dangerous condition when sold. If the product was not unreasonably dangerous or was not dangerous at all, there can be no liability even though the consumer in both instances might suffer injuries as a result of using the product. There is no duty to warn if the product is not unreasonably dangerous at the time sold and when used by the consumer. The product need not be defective at all, but if the product is unreasonably dangerous when sold or placed into the channels of commerce, that is enough if not accompanied by an adequate warning. In such a case, the phrase "failure to warn" is a substitute for "in a defective condition." However, if the product is not defective and not unreasonably dangerous at the moment that the seller parts with possession of the product, but the manufacturer-seller can anticipate that through use the product will change and become unreasonably dangerous, then the product is deemed defective and unreasonably dangerous at the time sold, thus requiring an adequate warning. *Sharp v. Chrysler Corporation*, supra, at 136.

■ There was some evidence of a design defect in that the piston inside the cylinder was not made of non-corrosive stainless steel. The evidence indicates that the reason the piston stuck in a depressed position was because it had rusted or corroded from accumulated vapor inside the cylinder. If the case is tried as a design defect case, the Texas Supreme Court has defined the test or standard to be used in determining the violation of duty issue. *Henderson v. Ford Motor Company*, 519 S.W.2d 87, 92 (Tex.1975), established a bifurcated test for determining whether a product is unreasonably dangerous and thus defective. The test as adopted by the majority of the court in that opinion is that a product will not be considered unreasonably dangerous unless *either* (1) a reasonably

prudent manufacturer aware of the risk involved in its use would not place it into the channels of commerce, *or* (2) the product would not meet the reasonable expectations of the ordinary consumer as to its safety.

■■■■■ Those who use a product for the first time do not expect to receive a dangerously defective product. The question in a strict liability case is not what was expected, but what the consumer or user actually received and consumed or used. The litigation issue is limited to the specific product and its condition when sold and when consumed or used. The consumer has a right to expect that he will receive from the manufacturer a product that is safe. If the product is unreasonably dangerous, then the manufacturer must warn the consumer or user of the dangers involved in consuming or using the product. The adequacy of the warning or directions may be and usually is a question for the jury. *Bituminous Casualty Corp. v. Black & Decker Mfg. Co.,* 518 S.W.2d 868, 873 (Tex.Civ.App.Dallas 1974, writ ref'd n. r. e.). Sales & Perdue, *The Law Of Strict Tort Liability In Texas,* 14 Hous.L.Rev. 1, p. 23 (1976–77). In a *negligence* action against a manufacturer, the violation of duty is based on the foreseeability of the risk of harm and the failure to use ordinary care to avoid the risk. In a *Sec. 402A action,* the violation of the seller's duty is not based on the foreseeability of the risk of harm, but upon tracing the consumer's injury by hindsight back to the seller's placing the product in the stream of trade. Thus, one who sells a nondefective unreasonably dangerous product without communicating the dangerousness of the product to the one who is injured by the product, is liable for the injuries inflicted by the unreasonably dangerous item. Green, *Strict Liability Under Sections 402A and 402B: A Decade Of Litigation,* 54 Texas L.Rev. 1185, 1219 (1976).

■■■■■ In determining whether the seller has violated his duty to the consumer, the jury must be instructed concerning the defensive evidence presented. Assumption of risk may be raised by the evidence and the test is whether the consumer or user voluntarily exposed himself to the risk of injury

with knowledge and appreciation of the danger. *Henderson v. Ford Motor Company,* supra.

■■■■■ The defense of "misuse" may not always be an absolute bar to recovery. *General Motors Corporation v. Hopkins,* supra. There also seems to be a move away from "assumed risk" as being an absolute bar to recovery. California has abolished the defense of "assumption of risk" in strict products liability cases to the extent that it is a form of contributory negligence. *Daly v. General Motors Corporation,* 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978). In both instances comparative fault has been extended to actions founded on strict products liability so that misuse and assumed risk are no longer total bars to recovery. A formula using pure comparative fault or negligence has been applied such that the plaintiff's recovery of damages is reduced by the percentage to which his own negligence contributed to his injury; thus the defendant seller does not escape responsibility under the doctrine of strict liability in a products case by proving that the plaintiff assumed the risk of being injured or that the plaintiff misused the product, but neither does the plaintiff recover the full amount of damages proved. The all or nothing-at-all recovery seems to have been eroded. *Daly v. General Motors Corporation,* supra, 144 Cal.Rptr. at 387, 575 P.2d at 1169; *Li v. Yellow Cab Company,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975).

■■■ In the present case we have an experienced mechanic who was about to attempt repair of a spring loaded air cylinder which contained no warning on the cylinder itself and a cylinder with which the mechanic was unfamiliar, which had undergone expected change from the time it was sold to the time it was picked up for servicing by Hamilton. Was it necessary that MCI give any warning to an experienced air cylinder repairman who was unfamiliar with spring loaded air cylinders? We believe that the question is one for the jury. Another jury question is whether the warning was adequate.

■■■ The Texas Supreme Court has rejected for this State the defense of negli-

**578**

gent failure to discover a defect or to foresee the danger. *Shamrock Fuel & Oil Sales Co. v. Tunks,* supra. Thus, contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product or to guard against the possibility of its existence. Hamilton is not barred from recovery if he negligently failed to discover the defect in the product, or negligently failed to guard against the possibility of its existence. *Henderson v. Ford Motor Company,* supra.

The favorable facts raised an issue concerning whether or not MCI could anticipate a set of conditions causing the piston to stick in a position so that the spring was depressed and that the air cylinder would become unreasonably dangerous to the uninformed or untrained repairman, necessitating an adequate warning.

We have concluded, and therefore hold, that the evidence presented by appellant Hamilton, viewed in the light most favorable to him, was sufficient to raise all the issues of a Sec. 402A cause of action and that the trial court erred in instructing a verdict and rendering judgment in favor of appellee, Motor Coach Industries, Inc. The judgment of the trial court is reversed and the cause is remanded for further proceedings.